IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 27, 2007

## EMMETT CRUTCHER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-C-2026     Mark J. Fishburn, Judge**

_____

**No. M2007-00483-CCA-R3-PC - Filed January 29, 2008**

_____

The petitioner, Emmett Crutcher, pled guilty in 2005 to attempted aggravated arson and was sentenced as a Range II, multiple offender to twelve years in the Department of Correction. In 2006, the petitioner filed for post-conviction relief, alleging that his trial counsel was ineffective. After an evidentiary hearing, the post-conviction court denied his petition, and we affirm that judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

J. Chase Gober, Nashville, Tennessee, for the appellant, Emmett Crutcher.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At the petitioner's guilty plea hearing, the State summarized the proof it was prepared to present at trial:

> Your Honor, if this matter had gone to trial, the State would have had witnesses who would testify under oath that on March the 26th, 2004, here in Nashville, Davidson County, while the [petitioner's] ex-girlfriend, Angela Jenkins, was visiting her current boyfriend, James Greene, she heard the [petitioner] banging on Mr. Greene's door yelling for her. A witness, Robert Mason[,] was visiting neighbors across the street, he heard the commotion, observed the [petitioner] standing in front of the

residence as the fire ignited. Mr. Mason began yelling at the [petitioner] and the [petitioner] ran from the scene. Ms. Jenkins was able to leave the residence without injuries. And a few hours prior to this incident, the victim, Mr. Greene, was confronted by the [petitioner] in this case when he threatened to burn his house.

The petitioner timely filed a *pro se* petition for post-conviction relief. Counsel was subsequently appointed and an amended petition was filed, in which the petitioner argued that his guilty plea was unknowing and involuntary because of trial counsel's ineffective assistance. He alleged that trial counsel coerced him into accepting the plea and did not adequately explain the plea agreement to him, fully investigate the facts surrounding his claim, or investigate possible defenses. He stated that he believed he had no real choice but to accept the plea bargain and that he would have insisted on proceeding to trial had he fully understood the plea agreement.

At the evidentiary hearing, Agnes Crutcher, the petitioner's sister, testified that she told trial counsel that the petitioner was at her house the night of the fire and that she could not understand why counsel was advising the petitioner to plead guilty to a crime he did not commit. On cross-examination, she acknowledged that she could not cite any specific actions of trial counsel which led her to believe he was unduly pressuring the petitioner into pleading guilty.

The petitioner testified that counsel told him he would be found guilty if he went to trial and that he would not have pled guilty but for this advice. He said that the only time he discussed potential defenses with trial counsel was when they met on the day of the plea hearing. He recalled discussing with counsel witnesses that should be interviewed, but said they never discussed hiring an investigator. He testified that he received a copy of the State's discovery materials prior to trial but could not read them because he did not have a pair of glasses. He asked someone from jail to read the materials to him, but that person did not explain them in detail.

On cross-examination, the petitioner acknowledged that trial counsel discussed with him the State's proof, the charges against him, and the potential sentences he could receive. He testified that counsel coerced him into taking a plea by telling him a jury would find him guilty if he did not. Later in his testimony, he said that he made a conscious decision to take the plea based on his own concern about being convicted at trial, although he insisted that trial counsel "tricked" him by telling him he would be found guilty if he went to trial. The petitioner testified that trial counsel did not inform him how concurrent sentences were calculated. He could not recall whether he told trial counsel that his sister would testify that she was with him on the night of the fire.

On examination by the post-conviction court, the petitioner acknowledged that trial counsel did not tell him that service of his prior six-year sentence would be credited against his current twelve-year sentence.

Trial counsel testified that he had been practicing law since 1999 and had handled hundreds of criminal cases. He recalled meeting with the petitioner at least six or seven times and that the petitioner wore glasses to some of these meetings. Although the glasses were in disrepair, counsel

testified that the petitioner never indicated that he could not read his paperwork. He said that he discussed in detail the facts of the case with the petitioner, including witness statements and potential strategies. He remembered speaking with the petitioner's sister on the day of the guilty plea hearing but did not recall that she told him she could testify as an alibi witness for the petitioner.

Trial counsel denied that he coerced the petitioner into pleading guilty. He remembered telling the petitioner that, based on the evidence against him, his odds were not great if he were to go to trial. He said it was the petitioner's decision to plead guilty, and he never told the petitioner he would receive credit against his twelve-year sentence for time served on his six-year aggravated burglary sentence.

## ANALYSIS

On appeal, the petitioner argues that trial counsel was ineffective in (1) not adequately investigating the facts of the case; (2) not properly explaining the length of the petitioner's sentence; and (3) not filing a notice of alibi on behalf of the petitioner. He challenges the post-conviction court's finding that his guilty plea was knowing and voluntary. The State responds that the findings of the post-conviction court are correct because the petitioner has proven neither that counsel's representation was deficient nor that any deficiency prejudiced his defense.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. Amend. VI; Tenn. Const. Art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard

is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

The transcript of the submission hearing shows that, before accepting the petitioner's guilty plea, the trial court examined him on whether his plea was knowing, intelligent, and voluntary. The petitioner told the court that he had not consumed any intoxicant within the previous twenty-four hours and had never been diagnosed with a mental illness or disorder. He said that he signed the petition to plead guilty after his attorney read it to him, that his attorney answered all of his questions about the petition, and that he fully and completely understood the contents of the petition. He said he understood the elements of the offense which the State would be required to prove in order for a jury to convict him. The court explained to the petitioner the conditions of his agreed sentence, and the petitioner said he understood these conditions.

Further, at the submission hearing, the petitioner said that his attorney discussed with him in detail the facts and circumstances surrounding his arrest, the law applicable to his case and possible defenses, and answered all of his questions satisfactorily. He had no complaints about counsel's representation of him. The court explained to the petitioner his rights to counsel, to a jury trial, to confront witnesses, to testify on his own behalf, to have a jury set fines in excess of $50, and to appeal a guilty verdict. The petitioner testified that he understood these rights, no one had threatened him with anything or promised him anything in order to elicit his guilty plea, and he was entering his plea because he believed it to be in his best interests. The trial court then found the petitioner guilty, concluding that there was a factual basis to support the plea, the petitioner was competent to enter the plea, and that he pled freely, knowingly, and voluntarily.

The post-conviction court dismissed the petition, concluding that the petitioner's testimony was not credible:

> In this case, [the petitioner] acknowledged that his attorney read to him the plea petition, answered all of his questions and that he understood its contents before signing it. Among the many provisions contained in the plea petition, three are of particular note. In paragraph 5, [the petitioner] represented that his attorney had informed him in detail of and that he understood what evidence the State intends to introduce, that the attorney had explained to him all possible defenses, and that he understood the definition of the charge against him. In paragraph 19, [the petitioner] denies any inappropriate influence being brought to bear on his decision to plea[d] guilty. In paragraph 20, he states that he had no complaints with the representation his attorney provided or in their ability to communicate. These same issues were also addressed by the Court during the plea colloquy and the same responses were given by [the petitioner]. Additionally, the possible punishment for the indicted offense and the actual punishment for the pled offense were covered in the petition and at the in-court plea.
>
> The Court does not find credible the [p]etitioner's assertion that he was tricked or misle[d] by [trial counsel] to plead guilty by explaining to him the pre-judgment jail credits to which he would be entitled were retroactive to the judgment in the other case. [Trial counsel] is an experienced attorney and was emphatic that

he told him his jail credits would begin to run from the date of arrest. [The petitioner's] assertion that he was told he would get credit for "street time" before he was even charged with this crime is preposterous.

The Court finds no credible evidence that [trial counsel] was deficient in any manner during his representation of Petitioner or that [the petitioner] would not have pled guilty but for those deficiencies. Although a best interest plea was entered, the Court is satisfied that [the petitioner] fully understood the consequences of entering the plea and that he voluntarily entered the plea to avoid the much greater consequences of a conviction.

The post-conviction court made a credibility determination in the matter, crediting the testimony of trial counsel and disbelieving that of the petitioner. The record fully supports this determination.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE